# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued May 8, 2006          Decided July 11, 2006

No. 05-5151

WILLIAM A. DAVY, JR.,
APPELLANT

v.

CENTRAL INTELLIGENCE AGENCY,
APPELLEE

---

Appeal from the United States District Court
for the District of Columbia
(No. 00cv02134)

---

*Daniel S. Alcorn* argued the cause for the appellant. *James H. Lesar* was on brief.

*Charlotte A. Abel*, Assistant United States Attorney, argued the cause for the appellee. *Kenneth L. Wainstein*, United States Attorney, and *Michael J. Ryan*, Assistant United States Attorney, were on brief. *R. Craig Lawrence*, Assistant United States Attorney, entered an appearance.

Before: HENDERSON, ROGERS and GRIFFITH, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: The appellant, William Davy, Jr., filed a Freedom of Information Act (FOIA), 5 U.S.C. §§ 552 *et seq.*, request with the Central Intelligence Agency (CIA or Agency), seeking certain documents related to the Agency's alleged role in the assassination of President John F. Kennedy. After the CIA failed to provide the requested documents, Davy instituted this action against it. Thereafter, Davy and the CIA entered into a Joint Stipulation, which established dates by which the CIA would produce responsive documents. The district court memorialized the stipulation in an order, which made the deadlines judicially enforceable. The CIA complied with the order and handed over documents to Davy. It then sought summary judgment, which the district court granted. Davy subsequently moved for attorney fees. The district court denied Davy's motion in a minute order. He appeals. We reverse the district court's minute order, concluding that Davy "substantially prevailed" in this action. Because Davy is eligible for fees, we remand to the district court to determine whether he is entitled to fees under FOIA.

I.

Davy, an author interested in the CIA's alleged involvement in the assassination of President John F. Kennedy, submitted a FOIA request to the CIA on December 13, 1993, seeking "all records . . . pertaining to and/or captioned: Project QKENCHANT and Project ZRCLIFF." Letter from William A. Davy, Jr., to FOIA/PA Unit, Central Intelligence Agency (Dec. 13, 1993), reprinted at Joint Appendix (JA) 18. Nearly six years after Davy made his initial request—on November 22, 1999—the CIA informed him that it could "neither confirm nor deny the existence or nonexistence of such records," citing FOIA Exemptions 1 and 3. Letter from Kathryn I. Dyer, Acting Information and Privacy Coordinator, Central Intelligence Agency, to William A. Davy, Jr. (Nov. 22, 1999), JA 23–24.

Davy appealed the denial of his request through the CIA's administrative appeals process. The CIA denied the appeal in a letter dated June 20, 2000.

Davy then sued the CIA, seeking the documents he requested in his 1993 letter. Because the CIA claimed that the suit was time-barred, Davy filed another FOIA request with the CIA on November 16, 2000, in which he renewed his 1993 request and sought the production of additional information. The CIA then moved to dismiss the suit. The district court granted the motion but allowed Davy 90 days to amend his complaint. Davy then sought leave to file his first amended complaint, which the district court granted. The first amended complaint sought the production of documents requested in the 2000 FOIA request. Thereafter, Davy and the CIA reached a Joint Stipulation for the production of responsive documents. The district court approved the Joint Stipulation and memorialized it in a court order dated May 4, 2001. The order provides that the "CIA will provide Plaintiff all responsive documents, if any," based on his 1993 and 2000 FOIA requests, by certain dates. *Davy v. CIA*, No. 00-cv-2134 (D.D.C. filed May 17, 2001). The CIA complied with the order.

The CIA then moved for summary judgment, arguing that the scope of its search was sufficient. Davy responded by filing a cross-motion for summary judgment, contending that the CIA improperly restricted the scope of its search and failed to turn over all responsive documents. Because Davy's cross-motion raised issues not addressed in the CIA's motion, the CIA filed a superseding motion for summary judgment. Davy did not respond to the superseding motion for summary judgment and the district court accordingly considered Davy's cross-motion as his response to the Agency's superseding motion. The court granted summary judgment to the CIA, deciding that the scope of its search was reasonable and that the FOIA exemptions it asserted were valid. *See Davy v. CIA*, No. 00-cv-2134 (D.D.C.

filed July 12, 2004). Davy then moved for attorney fees under 5 U.S.C. § 552(a)(4)(E). The CIA opposed the motion, arguing only that Davy was not eligible for fees because he was not a prevailing party within the meaning of the United States Supreme Court's decision in *Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health & Human Resources*, 532 U.S. 598 (2001). *See* Mem. & P. & A. in Opp'n to Pl.'s Mot. for Att'y's Fees (Sept. 8, 2004). The district court denied Davy's motion in a minute order.

## II.

Davy appeals from the denial of his motion for attorney fees. We review whether he was eligible for attorney fees—that is, whether he "substantially prevailed"—de novo because it rests on " 'an interpretation of the statutory terms that define eligibility for an award.' " *Edmonds v. FBI*, 417 F.3d 1319, 1322 (D.C. Cir. 2005) (quoting *Nat'l Ass'n of Mfrs. v. Dep't of Labor*, 159 F.3d 597, 599 (D.C. Cir. 1998)).

FOIA permits a court to award reasonable attorney fees to a plaintiff who has "substantially prevailed" in a FOIA action. 5 U.S.C. § 552(a)(4)(E). In *Buckhannon*, the Supreme Court interpreted the term "prevailing party" in the fee-shifting provisions of the Fair Housing Amendments Act of 1988, 42 U.S.C. §§ 3601 *et seq.*, and the Americans With Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq. Buckhannon* rejected the catalyst theory under which several circuit courts, including ours, *see, e.g.*, *Chesapeake Bay Found., Inc. v. Dep't of Agric.*, 11 F.3d 211, 216 (D.C. Cir. 1993), had held that "a plaintiff is a 'prevailing party' if it achieves the desired result because the lawsuit brought about a voluntary change in the defendant's conduct," *Buckhannon*, 532 U.S. at 601–02. Instead, the Court held, a plaintiff is a prevailing party only if he has "received a judgment on the merits" or secured a settlement agreement enforced by a consent decree. *Id.* at 605. Thus, a defendant's "voluntary change in conduct, although perhaps accomplishing

what the plaintiffs sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change." *Id.* (emphasis in original).

We first considered whether the *Buckhannon* holding applies to the FOIA fee-shifting provision in *Oil, Chemical & Atomic Workers International Union v. Department of Energy* (*OCAW*), 288 F.3d 452 (D.C. Cir. 2002). Finding that the " 'substantially prevail' language in FOIA [is] the functional equivalent of the 'prevailing party' language found in" the statutes *Buckhannon* interpreted, we applied the *Buckhannon* interpretation of "prevailing party" to FOIA's attorney fee provision, holding that "in order for plaintiffs in FOIA actions to become eligible for an award of attorney fees, they must have 'been awarded some relief by [a] court,' either in a judgment on the merits or in a court-ordered consent decree." *OCAW*, 288 F.3d 455–57 (quoting *Buckhannon*, 532 U.S. at 603); *see Union of Needletrades, Indus. & Textile Employees v. INS*, 336 F.3d 200, 206 (2d Cir. 2003) (same).

In *OCAW*, the OCAW sued the United States Department of Energy to obtain documents it alleged were improperly withheld under FOIA. 288 F.3d at 453. The district court ordered the agency to "complete its record review in 60 days." *Id.* at 458. After completing the search, the agency provided the plaintiff with the responsive documents and the parties agreed to dismiss the suit. *Id.* at 453. The plaintiff then sought attorney fees, arguing that it had "substantially prevailed." *Id.* at 453–54. We held that the order requiring the agency to search the records did not constitute court-ordered relief on the merits. *Id.* at 458–59. We highlighted the order's interim nature, which was procedural—conduct a search—as opposed to substantive— produce documents. *Id.* at 458. We stated, "Before August 23, the court had not ordered the Energy Department to turn over any documents; after August 23, the Energy department still had no obligation to do so." *Id.* Accordingly, OCAW did not obtain

relief on the merits because it sought documents, not merely a search therefor. *Id.* at 458–59.

In *Edmonds*, *supra*, we considered the meaning of FOIA's "substantially prevailed" language. Edmonds sued the Federal Bureau of Investigation (FBI) seeking expedited processing of her FOIA request as well as documents. *Edmonds*, 417 F.3d at 1320–21. The plaintiff sought and obtained partial summary judgment on her expedited processing claim. The district court ordered the FBI "to complete the expedited processing . . . *and* provide plaintiff with all documents as to which no exemption is being claimed" by a certain date. *Id.* at 1321 (emphasis added). After complying with the order, the FBI sought summary judgment, which motion the district court granted. *Id.* Thereafter, Edmonds sought attorney fees and the district court denied her motion. *Id.* We reversed, holding that she had "substantially prevailed." We differentiated *OCAW* on the ground that Edmonds had obtained a court-order on the precise relief she sought—expedited processing and the production of responsive documents. *Id.* at 1323.

Similarly, Davy "substantially prevailed" in this action when the district court issued the May 4, 2001 order. First, the order changed the "legal relationship between [the plaintiff] and the defendant," *Buckhannon*, 532 U.S. at 604 (alteration in original) (internal quotation marks and citation omitted), and, second, Davy was awarded some relief on the merits of his claim. With respect to these factors, we see little difference between Edmonds and Davy. The CIA characterizes the order as requiring nothing more than a search for documents—and thereby analogizes the case to *OCAW*—but the order's wording belies the Agency's interpretation. The order provides Davy with the precise relief his complaint sought—"mak[ing] the requested information promptly available." 1st Am. Compl. at 17, JA 12. It states that the CIA "will provide Plaintiff" with the responsive documents "if any" by April 30, 2001, May 31, 2001,

or July 31, 2001, depending on the documents' subject matter. It is almost indistinguishable from the *Edmonds* order, which required the FBI to "provide plaintiff with all documents as to which no exemption is being claimed." *Edmonds*, 417 F.3d at 1321. Here, before May 4, 2001, the CIA was not under any judicial direction to produce documents by specific dates; the May 4, 2001 order changed that by requiring the Agency to produce all "responsive documents" by the specified dates. Like the *Edmonds* order, the May 4, 2001 order was a "judicially sanctioned change in the legal relationship of the parties" because "timely production of nonexempt documents by the [CIA] could no longer be described as a voluntary change in the defendant's conduct." *Id.* at 1322–23 (internal quotations and citations omitted). Once the district court issued the order, Davy obtained an "enforceable judgment" on the merits of his complaint. If the Agency failed to comply with the order, it faced the sanction of contempt. *See Edmonds*, 417 F.3d at 1323.

We also reject the Agency's argument that the May 4, 2001 order lacks the requisite "judicial imprimatur." *Buckhannon* tells us that "[i]n addition to judgments on the merits, . . . settlement agreements enforced through a consent decree may serve as the basis for an award of attorney's fees." 532 U.S. at 604. This is so even if the consent decree does not include an admission of liability by the defendant because it is nonetheless a "court-ordered 'chang[e][in] the legal relationship between [the plaintiff] and the defendant.' " *Id.* (quoting *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792 (1989)) (alterations in *Buckhannon*). That the order is styled "order" as opposed to "consent decree" is of no consequence. We are persuaded by the Fourth Circuit's decision in *Smyth ex rel. Smyth v. Rivero*, in which the court stated:

> We doubt that the Supreme Court's guidance in *Buckhannon* was intended to be interpreted so restrictively as to require that the words "consent

decree" be used explicitly. Where a settlement agreement is embodied in a court order such that the obligation to comply with its terms is court-ordered, the court's approval and the attendant judicial over-sight (in the form of continuing jurisdiction to enforce the agreement) may be equally apparent. We will assume, then, that an order containing an agreement reached by the parties may be functionally a consent decree for purposes of the inquiry to which *Buckhannon* directs us, even if not entitled as such.

282 F.3d 268, 281 (4th Cir. 2002). The order here is functionally a settlement agreement enforced through a consent decree. On its face, it (1) contains mandatory language (e.g., it is "ORDERED *nunc pro tunc* that No later than April 30, 2001, the CIA will . . ."); (2) is entitled an "ORDER"; and (3) bears the district judge's signature, not those of the parties' counsel. *See Truesdell v. Phila. Hous. Auth.*, 290 F.3d 159, 165 (3d Cir. 2002).

Because Davy "substantially prevailed" in his FOIA action, he is eligible to attorney fees under 5 U.S.C. § 552(a)(4)(E). That is not the end of the matter, however, because the court must then consider whether he is "entitled" to attorney fees. *See Edmonds*, 417 F.3d at 327. In determining whether a "prevailing" FOIA plaintiff is entitled to fees, the district court assesses four factors: "(1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding." *Tax Analysts v. U.S. Dep't of Justice*, 965 F.2d 1092, 1093 (D.C. Cir. 1992). We review the district court's determination for abuse of discretion. *Id.* at 1094. Meaningful review requires us to evaluate the district court's rationale for its holding. *See Copeland v. Marshall*, 641 F.2d 880, 901 n.39 (D.C. Cir. 1980) (en banc) ("It is axiomatic that we cannot identify an

unreasonable award unless it is accompanied by a statement of reasons."). Here, the district court did not provide any explanation and we are therefore unable to review its decision. The parties urge us to decide whether Davy is entitled to attorney fees.[1] Mindful, however, that an "appellate court is not well situated to assess the course of litigation and the quality of counsel," *Williams v. First Gov't Mortgage & Investors Corp.*, 225 F.3d 738, 747 (D.C. Cir. 2000), we decline to do so. The district court is better suited to make the initial determination. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) (appellate review of fee determination is to ensure district court"provide[d] a concise but clear explanation of its reasons for the fee award"). The district court, unlike the appellate court, "closely monitors the litigation on a day-to-day basis," *Morgan v. District of Columbia,* 824 F.2d 1049, 1065–66 (D.C. Cir. 1987), by "presid[ing] at numerous motions, discovery disputes, and chambers conferences, as well as at the pretrial conference and trial," *id.* at 1066 (alteration in original) (internal quotation marks and citation omitted); *see Hensley*, 461 U.S. at 437. If the district court fails to articulate the basis for its attorney fee decision, we believe remand for adequate explanation of its reasoning is in order. *See Copeland*, 641 F.2d at 901 n.39 ("[A] remand may be necessary where the District Court awards a fee without adequately articulating underlying reasons.").

---

[1]Davy also requested that we "remand the case to the District Court so that the District Court can determine the amount by which these fees should be increased in light of the additional fees incurred on appeal." Appellant's Br. at 23. Because he did not raise the question before us, we do not decide his entitlement to attorney fees incurred on appeal. Accordingly, on remand he may raise the issue before the district court for its consideration.

For the foregoing reasons, we reverse the district court order and remand for proceedings consistent with this opinion.

*So ordered.*