# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued January 7, 2008        Decided April 15, 2008

No. 05-1421

DUNCAN'S POINT LOT OWNERS ASSOCIATION INC., ET AL.,
PETITIONERS

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

UNION ELECTRIC COMPANY, ET AL.,
INTERVENORS

Consolidated with
06-1157, 06-1325

On Petitions for Review of Orders of the
Federal Energy Regulatory Commission

*Eliehue Brunson* argued the cause and filed the briefs for petitioners.

*Inez Y. Kaiser*, pro se, filed a brief as intervenor in support of petitioner.

*Samuel Soopper*, Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. With him on the brief were *Cynthia A. Marlette*, General Counsel, and *Robert H. Solomon*, Solicitor. *John S. Moot*, Attorney, entered an appearance.

*Charles A. Zdebski* argued the cause and filed the brief for intervenor Union Electric Company.

Before: RANDOLPH and GRIFFITH, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the court filed by *Circuit Judge* GRIFFITH.

GRIFFITH, *Circuit Judge*: The operator of a hydroelectric project at the Lake of the Ozarks in central Missouri, acting pursuant to a license issued by the Federal Energy Regulatory Commission ("FERC" or "the Commission"), granted a developer an easement for a wastewater discharge pipe and permission to build a seawall. FERC found that both actions violated the license and ordered several remedies. Petitioners challenged FERC's handling of the matter. For the reasons set forth below, we deny their petitions for review.

## I.

The Bagnell Dam, completed in 1931, impounds the Osage River in central Missouri to create the Lake of the Ozarks — a massive, narrow, twisting reservoir that covers over 55,000 acres and, with its many long branches, creates a shoreline of some 1150 miles. The dam is part of the Osage Hydroelectric Project ("Osage Project"), which has the capacity to generate 176.2 megawatts of power. In 1981, FERC granted the Union Electric Company, doing business

as AmerenUE ("Ameren" or "the licensee"), a twenty-five-year license to operate the Osage Project.

Petitioners are lot owners, homeowners, and residents of Duncan's Point, a historic resort that borders the Lake of the Ozarks. Daniel Ralph Duncan, an African-American businessman from Kansas City, Missouri, founded Duncan's Point in 1952 to offer "African-Americans peace, solitude and an escape away from the indignities of racial inequality." Notice of Formal Complaint against Ameren at 3, Duncan's Point Lot Owners Ass'n v. Union Elec. Co., No. EL05-73-000 (Mar. 4, 2005). The resort has over 300 acres and 70 homes, and offers access to fishing, boating, hunting, water skiing, and swimming. *Id.* It is eligible for listing in the National Register of Historic Places. *Duncan's Point Lot Owners Ass'n v. Union Elec. Co.*, 111 F.E.R.C. ¶ 61,190, 61,919 (2005).

Ameren's license to operate the Osage Project includes terms governing the management of project property. In a September 2004 letter order to Ameren, FERC announced its determination that Ameren had violated two provisions of the license by granting Pebble Creek Homes Association ("Pebble Creek" or "the developer") — a developer building a community of lakefront homes near Duncan's Point — an easement for an effluent discharge pipe that crossed project property, and permission to build a 2232-foot long seawall on the lake shoreline, which is also project property. FERC's September 2004 letter order explained that the seawall, 300 feet of which had already been built, and the discharge pipe "may have impeded public access to the Lake in contradiction to article 18 of the license." Letter from John E. Estep, FERC Division of Hydropower Administration and Compliance, to David Fitzgerald, Ameren, at 4 (Sept. 7, 2004) ("September 2004 Letter"). Article 18 provides that "[s]o far as is

consistent with proper operation of the project, the Licensee shall allow the public free access, to a reasonable extent, to project waters and adjacent project lands owned by the Licensee for the purpose of full public utilization of such lands and waters for navigation and for outdoor recreational purposes, including fishing and hunting." *See Union Elec. Co., Project No. 459*, 15 F.E.R.C. ¶ 62,038, 63,046 (1981) (incorporating into the license the terms and conditions set forth in Form L-3 (revised Oct. 1975), entitled *Terms and Conditions of License for Constructed Major Project Affecting Navigable Waters of the United States*, 54 F.P.C. 1792, 1822 (1975), which terms include article 18). FERC's letter also explained that because Ameren "did not consider alternatives to a seawall such as plantings or rip-rap nor did it consider that a seawall may not have been necessary at the site," and because it "did not notify FERC . . . prior to permitting the discharge pipe," its actions violated article 41 of the license. September 2004 Letter at 3. Article 41 "delegates to the licensee authority to grant permission for certain use and occupancy of project property, including permits for construction of retaining walls, docks and similar structures." *Id.* at 1; *see also* 15 F.E.R.C. at 62,048–49 (article 41).

FERC ordered that the construction of the seawall cease and that Ameren take detailed steps to mitigate the harm already caused. September 2004 Letter at 4–6. Among other things, FERC ordered that Ameren facilitate public access to the lake by constructing a walkway along the seawall, designating an area at the crossroads of the Duncan's Point and Pebble Creek communities as a shoreline access area for the public, and developing a two-acre park near the new development with a parking area and trail to the lake. *Id.* In February 2005, FERC sent a follow-up letter order noting Ameren's compliance with several of the requirements and

reminding it of its remaining obligations. Letter from John E. Estep, FERC Division of Hydropower Administration and Compliance, to Warren Witt, Ameren (Feb. 23, 2005).

Petitioners received copies of both FERC's September 2004 and February 2005 letter orders, but did not properly request rehearing of either. *See Union Elec. Co.*, 114 F.E.R.C. ¶ 61,038, 61,112 n.14 (2006) (explaining that the filing petitioners submitted regarding the two letter orders failed to properly request rehearing). Petitioners filed a complaint with FERC pursuant to FERC's regulations, which provide that "[a]ny person may file a complaint seeking Commission action against any other person alleged to be in contravention or violation of any statute, rule, order, or other law administered by the Commission, or for any other alleged wrong over which the Commission may have jurisdiction." 18 C.F.R. § 385.206. Petitioners' complaint alleged that Ameren's actions with regard to the discharge pipe and seawall violated the project license, as well as the National Environmental Policy Act ("NEPA"), the National Historic Preservation Act ("NHPA"), the Clean Water Act ("CWA"), and easements and covenants running with the land. FERC denied the complaint. Its order stated that NEPA and the NHPA apply to federal agencies, not private entities such as Ameren, and that FERC does not have jurisdiction over the petitioners' CWA claims. *Duncan's Point Lot Owners Ass'n v. Union Elec. Co.*, 111 F.E.R.C. ¶ 61,190, 61,923 (2005). FERC explained that most of the alleged violations "concern matters that are outside the Commission's jurisdiction, and those that are within [its] jurisdiction have already been adequately resolved by Commission staff." *Id.* at 61,920. Petitioners filed a request for rehearing, *see* 18 C.F.R. § 385.713 (providing for requests for rehearing of final Commission decisions or orders), challenging the denial of their complaint and alleging for the first time that FERC itself

had abridged petitioners' due process rights and had violated NEPA, the NHPA, and the CWA. FERC addressed and rejected petitioners' arguments and denied their request for rehearing. *Duncan's Point Lot Owners Ass'n v. Union Elec. Co.*, 112 FERC ¶ 61,289 (2005).

While petitioners were pursuing their claims before the Commission, FERC continued to monitor Ameren's compliance with its September 2004 and February 2005 letter orders. The Commission sent another letter order on September 1, 2005, reminding Ameren of its continuing responsibilities under the September 2004 order. Letter from John E. Estep, FERC Division of Hydropower Administration and Compliance, to Warren Witt, Ameren (Sept. 1, 2005). Dissatisfied with FERC's approach to Ameren's compliance obligations, petitioners filed a request for rehearing of this letter order, *see* 18 C.F.R. §§ 385.206, 713, which FERC denied. *Union Elec. Co.*, 114 F.E.R.C. ¶ 61,038 (2006). FERC sent yet another letter order to Ameren on March 28, 2006, reminding it of the duty to maintain in good condition the walkway in front of the seawall. Petitioners also sought rehearing of this letter order, 18 C.F.R. §§ 385.206, 713, which FERC denied. *Union Elec. Co.*, 116 F.E.R.C. ¶ 61,045 (2006).

Petitioners filed timely petitions for review of FERC's denials of their requests to rehear the dismissal of the complaint, and the September 1, 2005 and March 28, 2006 letter orders. We consolidated the petitions and have jurisdiction to consider them under 16 U.S.C. § 825*l*(b). We review the Commission's licensing decisions, such as those taken in this case, under a deferential standard and will set aside FERC's orders only if they are arbitrary and capricious. *North Carolina v. FERC*, 112 F.3d 1175, 1189 (D.C. Cir. 1997); 5 U.S.C. § 706(2)(A) (reviewing court shall set aside

agency actions found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"). We will uphold FERC's factual findings if they are "supported by substantial evidence." 16 U.S.C. § 825*l*(b).

## II.

Petitioners allege that FERC violated NEPA, the NHPA, and the CWA, and also denied them due process. We reject their arguments and conclude that FERC's responsibilities with respect to the discharge pipe and the seawall extended no further than its obligations under the license it granted to Ameren. FERC's manner of enforcing the license was reasonable and in accordance with law, *see* 5 U.S.C. § 706(2)(A), and FERC provided petitioners with ample notice and opportunity to participate in the proceedings. Accordingly, we deny the petitions for review.

Petitioners argue that NEPA requires FERC to prepare an environmental impact statement ("EIS") of Pebble Creek's installation of the discharge pipe and construction of the seawall. Under NEPA, a federal agency must prepare an EIS for "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C). We will overturn an agency's decision not to prepare an EIS only if that decision was arbitrary, capricious, or an abuse of discretion. *TOMAC v. Norton*, 433 F.3d 852, 861 (D.C. Cir. 2006). FERC explained that it did not prepare an EIS for the discharge pipe and seawall because these activities "are neither major nor significant." 112 F.E.R.C. at 62,312; *see* 42 U.S.C. § 4332(2)(C). Rather, they "are considered sufficiently insignificant that the Commission permits its licensees . . . to authorize them without prior Commission approval." 112 F.E.R.C. at 62,312. FERC also pointed to its regulations, which state that the Commission generally will not prepare an

EIS for activities such as the discharge pipe and seawall. *Id.* at 62,313 n.14 (citing 18 C.F.R. § 380.4(a)(19)).

Because "the EIS requirement is triggered only by a 'major Federal action[],' " *Fund for Animals, Inc. v. Thomas*, 127 F.3d 80, 83 (D.C. Cir. 1997), petitioners must argue that the installation of the discharge pipe and the building of the seawall are "major" actions. But they do not. Instead, they argue that NEPA calls for an EIS here because the discharge pipe and the seawall were under federal control and responsibility. This argument is insufficient, as federal control and responsibility for an action is not enough to trigger the EIS requirement. *See* 42 U.S.C. § 4332(2)(C). In any event, we are convinced that FERC's decision not to prepare an EIS for the discharge pipe and the seawall was reasonable. "The NEPA process involves an almost endless series of judgment calls," and "[t]he line-drawing decisions necessitated by [the NEPA process] are vested in the agencies, not the courts." *Coalition on Sensible Transp., Inc. v. Dole*, 826 F.2d 60, 66 (D.C. Cir. 1987). Our "role in reviewing an agency's decision not to issue an EIS is a limited one, designed primarily to ensure that no arguably significant consequences have been ignored," *TOMAC*, 433 F.3d at 860 (internal quotation marks omitted), and there is nothing in the record to suggest that FERC ignored any significant consequences to the environment resulting from the discharge pipe and the seawall. Moreover, we have upheld agency determinations not to prepare an EIS for activities affecting the environmental to a much greater extent than the discharge pipe and the seawall at issue in this case. *See id.* at 861 (concluding that the Bureau of Indian Affairs' decision not to prepare an EIS for the construction of a gaming resort was reasonable); *Dole*, 826 F.2d at 66–71 (concluding that the Department of Transportation's decision not to prepare an

EIS for a road construction project widening approximately sixteen miles of highway was reasonable).

Petitioners also argue that FERC violated the NHPA, 16 U.S.C. § 470 *et seq.*, which requires that a federal agency "take into account the effect" of any federally assisted "undertaking" on any district or site that is included in or is eligible for inclusion in the National Register of Historic Places, and "afford the Advisory Council on Historic Preservation . . . a reasonable opportunity to comment." *Id.* § 470f. Petitioners allege that FERC violated the NHPA because it did not consider the effect of Pebble Creek's activities on Duncan's Point, which is eligible for listing in the National Register of Historic Places. They argue that FERC had "indirect jurisdiction" over, and thus should have taken account of, Pebble Creek's activities because Ameren, which holds a project license issued by FERC, authorized the activities. They also argue that FERC failed to consult with the Advisory Council on Historic Preservation ("ACHP"), the Missouri State Historic Preservation Officer ("SHPO"), and the petitioners. They make this second argument, however, only in their reply brief, so it "comes too late for our consideration." *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 835 (D.C. Cir. 2001).

FERC agrees that it was required to consider the effect on Duncan's Point of any actions taken by the developer that were authorized under the Osage Project license. *See Sheridan Kalorama Historical Ass'n v. Christopher*, 49 F.3d 750, 754 (D.C. Cir. 1995) (stating that "federal authority to . . . license a project can render the project an undertaking" under the NHPA); 16 U.S.C. § 470w(7) (defining undertaking as a "project, activity or program . . . requiring a Federal permit[,] license, or approval"). The Commission emphasizes, however, that only the discharge pipe and the seawall were

authorized under the license, and that it properly took account of the effect of these activities on Duncan's Point. FERC visited the site, consulted with the preservation authorities, and concluded that the discharge pipe and the seawall would have no adverse impact on the Duncan's Point Historic District. This conclusion was reasonable, and petitioners do not point to any other activities that were authorized under the project license, nor do they offer any basis upon which FERC would have jurisdiction under the NHPA over activities not authorized under the license. Accordingly, we conclude that FERC fully met its responsibilities under the NHPA.

Petitioners also allege that FERC violated the CWA, but their argument on this point violates our rules. Federal Rule of Appellate Procedure 28(a)(9)(A) provides that the opening brief must contain "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." Petitioners' argument fails this standard. They state no reasons for their contention that FERC has violated the CWA and cite no authorities that would support such a claim. Petitioners' note that they argued before FERC that Ameren's approval of the effluent discharge pipe, its alleged approval of the placement of fill dirt by the developer in a wetlands area, and its proposed placement of a park in a wetlands area amounted to violations of the CWA. And they make reference to two provisions of the CWA: 33 U.S.C. §§ 1311(a), 1342(a). But then their argument abruptly ends, without explaining which CWA claims they are pursuing on appeal or how the CWA provisions they mentioned would support a claim against FERC. Petitioners' argument amounts to no more than an unsupported assertion that FERC violated the CWA. This is not enough, as "[w]e have repeatedly held that we will not address an 'asserted but unanalyzed' argument because 'appellate courts do not sit as self-directed boards of legal

inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them.' " *SEC v. Banner Fund Int'l*, 211 F.3d 602, 613–14 (D.C. Cir. 2000) (quoting *Carducci v. Regan,* 714 F.2d 171, 177 (D.C. Cir. 1983) and applying FED. R. APP. P. 28(a)(9)(A)).

Nonetheless, even if petitioners' argument did comply with our rules, it is without merit. FERC's responsibilities related to the CWA were limited, and it met them. Under the Federal Power Act, the Commission must "monitor and investigate compliance" with its licenses. 16 U.S.C. § 823b(a). The only license terms related to the CWA concerned Ameren's duty to confirm that the developer had secured the necessary permits under the CWA before allowing the discharge pipe. Because FERC properly verified that Ameren complied with the license in this regard, the Commission fulfilled its duties related to the CWA.

Finally, petitioners allege that FERC denied them due process. They accuse FERC staff of being "blinded by unprofessional motives" and "biased against [petitioners] and its members," who were denied notice and an opportunity to be heard about Ameren's violations of the license. Reply Br. at 13. These allegations find no support in the record. To the contrary, FERC acted professionally and gave petitioners ample notice and opportunity to participate in the proceedings, as petitioners acknowledge in their brief. *Id.* ("Yes, the record shows that Complainants [sic] have had opportunities to bring their concerns to the Commission's attention."). Petitioners complained that they were not provided an evidentiary hearing, but FERC explained that a hearing was unnecessary because the facts were not in dispute. *Moreau v. FERC*, 982 F.2d 556, 568 (D.C. Cir. 1993) ("FERC need not conduct an evidentiary hearing when there are no disputed issues of material fact.") Reviewing this

determination for "abuse of discretion," *Sacramento Mun. Utility Dist. v. FERC*, 474 F.3d 797, 804 (D.C. Cir. 2007), we find no error in FERC's decision to resolve petitioners' complaints on the written record.

\* \* \*

FERC acted reasonably throughout the controversy surrounding the developer's discharge pipe and seawall. Accordingly, we deny the petitions for review.

*So ordered.*