James D. TRUESDELL, Appellant,

v.

The PHILADELPHIA HOUSING AUTHORITY, a body corporate and politic; Carl Greene; Barbara Baylor; Deborah Featherson, As individuals and in their official capacities.

No. 01–1557.

United States Court of Appeals, Third Circuit.

Argued Jan. 17, 2002.

Filed May 7, 2002.

160

Paul A. Brooks (Argued), Michael Donahue, George Gould, Community Legal Services, Inc., Philadelphia, PA, for Appellant.

Michael Pileggi (Argued), Philadelphia Housing Authority, Philadelphia, PA, for Appellee.

Before ALITO and ROTH, Circuit Judges, and SCHWARZER,[1] Senior District Judge.

## OPINION OF THE COURT

ALITO, Circuit Judge.

James D. Truesdell, a participant in the federal Section 8 housing program, commenced this action under 42 U.S.C. § 1983 to enforce federal rights under the U.S. Housing Act of 1937, 42 U.S.C. § 1437f *et seq.*, against the Philadelphia Housing Authority ("PHA"), which administers the program locally. During the preliminary injunction hearing, the parties reached a settlement, which was memorialized in the District Court's Order dated January 24, 2000. On June 12, 2000, Truesdell moved for enforcement of the January 24th Order and for sanctions. Shortly thereafter, PHA came into compliance, and the Court dismissed Truesdell's motion as moot. Truesdell then filed two motions for attorney's fees, both of which were denied. Truesdell's subsequent motion under Rule 59(e) to alter or amend the Order denying attorney's fees and costs was similarly denied.

Because we find that Truesdell is a "prevailing party" within the meaning of 42 U.S.C. § 1988, we reverse and remand for a determination of an appropriate award of attorney's fees in accordance with this opinion.

### I.

In January 1998, James D. Truesdell ("Truesdell") became a participant in the federal Section 8 project-based[2] rental assistance program ("Section 8 program" or "Section 8"), established under 42 U.S.C. § 1437f *et seq.*, which is administered locally by the appellees—the Philadelphia Housing Authority, its Executive Director Carl Greene, and others in their employ, including Barbara Baylor and Deborah Featherson. The Section 8 program provides rent subsidies for low- and moderate-income participants so that they can afford to lease privately owned housing units. Under the program, participants make rental payments (i.e., "tenant rent") based on their income and ability to pay. The PHA then makes "housing assistance payments" to private landlords in an amount calculated to make up the difference between the participant's contribution and a "contract rent" agreed upon by the landlord and the PHA. If a participant's income declines, the participant may request

---

1. The Honorable William W Schwarzer, Senior District Judge for the Northern District of California, sitting by designation.

2. Project-based assistance differs from tenant-based assistance in that the former is tied to a particular unit, whereas the latter entails a voucher entitling the participant to select a unit anywhere in PHA's jurisdiction. (We are told that tenant-based assistance has a waiting list of approximately 14,000 people and that the list was closed when Truesdell requested tenant-based assistance.)

that PHA re-determine and lower the "tenant rent" and, consequently, increase PHA's "housing assistance payments." This will lower the participant's overall out-of-pocket rent obligation.

In November 1998, PHA set Truesdell's "tenant rent" at $62 per month, effective February 1, 1999; however, on January 25, 1999, Truesdell's income decreased to zero, and, consequently, his tenant rent should have been reduced. The parties disputed exactly when Truesdell notified the PHA that he was receiving no income.

In August 1999, Truesdell received notice from his landlord that it was closing the "Single Room Occupancy" ("SRO") building in which he lived. Truesdell requested that PHA lower his "tenant rent" retroactive to February 1, 1999, to reflect his loss of income on that date and that PHA issue him a Section 8 voucher so that he could move to another residence with continued Section 8 assistance.

On October 25, 1999, PHA notified Truesdell that it would lower his rent to zero retroactively beginning on September 1, 1999, but that it would *not* do so for the period between February 1 and August 31, 1999. PHA explained that Truesdell had not reported his loss of income until September 1999. PHA also notified Truesdell that because he was deficient in his "tenant rent" for the period beginning February 1, 1999, he was in violation of his lease and therefore could not qualify for a Section 8 voucher. Due to this deficiency in "tenant rent" for the same period, Truesdell's landlord began eviction proceedings on October 1, 1999.

On December 2, 1999, Truesdell commenced this § 1983 action raising two claims: (1) that PHA had unlawfully failed to re-determine and lower his "tenant rent" (and correspondingly, to increase the "housing assistance payment" to his landlord) effective February 1, 1999; and (2)

that PHA had refused to give him a Section 8 voucher. Truesdell sought declaratory and injunctive relief and compensatory and punitive damages.

On January 24, 2000, the District Court held a preliminary injunction hearing, during which the parties reached a settlement. The District Court's January 24th Order included the terms of the settlement: PHA was required (1) to provide rental assistance to Truesdell for placement in a "Single Room Occupancy" Dwelling; (2) to recommend Truesdell's application for admission to another PHA project with a unit that included food preparation and sanitary facilities; (3) to place Truesdell on the waiting list for receipt of tenant-based rental assistance, if and when the waiting list is reopened; and (4) to make appropriate retroactive adjustments in the housing assistance payment for the period from February 1, 1999, through September 1, 1999. During the hearing, Truesdell expressly reserved the right to file an attorney's fee petition later.

Shortly thereafter, PHA referred Truesdell to Oak Lane Court Apartments. By mid-March, Oak Lane had approved Truesdell's application and had applied to PHA for its approval of Truesdell's move into unit number 310. While waiting for approximately three months for PHA to approve the Oak Lane unit, Truesdell moved out of his previous SRO and lived in his father's house.

On June 12, 2000, Truesdell moved for enforcement of the January 24th Order and for sanctions. Four days after receiving Truesdell's motion, PHA gave its final approval for his move into Oak Lane unit 310. (Because unit 310 included private sanitary and kitchen facilities, this approval fulfilled PHA's obligations under both paragraphs 1 and 2 of the January 24th Order). On August 1, 2000, PHA provided

Truesdell with evidence that it had paid—on July 3, 2000—his former landlord in compliance with paragraph 4 of the Order. Thereafter, the District Court dismissed the motion to compel as moot.

On August 14, 2000, Truesdell filed two motions for attorney's fees under 42 U.S.C. § 1988, and these motions were denied by the District Court. Truesdell's subsequent motion under Rule 59(e) to alter or amend the Order denying attorney's fees and costs was similarly denied. Truesdell then filed this appeal.

## II.

### A.

We exercise plenary review over legal issues relating to the appropriate standard under which to evaluate an application for attorney's fees, including the question whether Truesdell was a "prevailing party." *See County of Morris v. Nationalist Movement*, 273 F.3d 527, 535 (3d Cir.2001).

Under the "American rule," parties are ordinarily responsible for their own attorney's fees. *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). Thus, there is "a general practice of not awarding fees to a prevailing party absent explicit statutory authority." *Key Tronic Corp. v. United States*, 511 U.S. 809, 114 S.Ct. 1960, 128 L.Ed.2d 797 (1994). Congress has, however, authorized the award of attorney's fees to a prevailing party in the Civil Rights Attorney's Fees Awards Act of 1976, 90 Stat. 2641, 42 U.S.C. § 1988(b), the statute upon which Truesdell relies in this case. Section 1988(b) states in pertinent part: "In any action or proceeding to enforce a provision of section[ ] ... 1983 ... of this title ..., the court, in its discretion, may allow the prevailing party ... a reasonable attor-ney's fee as part of the costs." As we have recently noted, "[a]lthough [§ 1988(b) ] expressly refers to a district court's discretion, it is well settled that a prevailing plaintiff should recover an award of attorney's fees absent special circumstances." *Nationalist Movement*, 273 F.3d at 535 (citing *Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 402, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968)).

The Supreme Court has given a "generous formulation" to the term "prevailing party," stating that " 'plaintiffs may be considered "prevailing parties" for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.' " *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (citation omitted). In *Texas State Teachers Ass'n v. Garland Independent School Dist.*, 489 U.S. 782, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989), the Court synthesized the definition of "prevailing party" as follows: "[T]o be considered a prevailing party within the meaning of § 1988, the plaintiff must be able to point to a resolution of the dispute which *changes the legal relationship* between itself and the defendant." *Id.* at 792, 109 S.Ct. 1486 (emphasis added). "The touchstone of the prevailing party inquiry must be the *material alteration of the legal relationship of the parties* ...." *Id.* at 792–93, 109 S.Ct. 1486 (emphasis added). In *Farrar v. Hobby*, 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992), the Court concluded that a plaintiff "must obtain [either] an enforceable judgment against the defendant from whom fees are sought, or comparable relief through a consent decree or settlement, [and] [w]hatever relief the plaintiff secures must directly benefit him at the time of the judgment or settlement .... Only under these circumstances can civil rights litigation ef-

fect 'the material alteration of the legal relationship of the parties' and thereby transform the plaintiff into a prevailing party." *Id.* at 111, 113 S.Ct. 566 (internal citations omitted) (emphasis added). Applying these criteria, the *Farrar* Court held that a plaintiff who wins only nominal damages is still a prevailing party under § 1988. *See* 506 U.S. at 112, 113 S.Ct. 566.

Finally, in *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources,* 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001),[3] the Supreme Court recently restated that "settlement agreements enforced through a consent decree may serve as the basis for an award of attorney's fees." *Id.* at 604, 121 S.Ct. 1835 (citing *Maher v. Gagne,* 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980)).[4] The Court confirmed that "[a]lthough a consent decree does not always include an admission of liability by the defendant, it nonetheless is a court-ordered 'chang[e][in] the legal relationship between [the plaintiff] and the defendant.'" *Id.* (quoting *Texas State Teachers Ass'n,* 489 U.S. at 792, 109 S.Ct. 1486 (citing *Hewitt v. Helms,* 482 U.S. 755, 760–61, 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987), and *Rhodes v. Stewart,* 488 U.S. 1, 3–4, 109 S.Ct. 202, 102 L.Ed.2d 1 (1988) (*per curiam*))). In a footnote, the Court distinguished between court-approved settlements and private settlements, stating that "private settlements do not entail the judicial approval and oversight involved in consent decrees. And federal jurisdiction to enforce a private contractual settlement will often be lacking unless the terms of the agreement are incorporated into the order of dismissal." *Id.* at n. 7, 121 S.Ct. 1835 (citing *Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994)). In a concurrence, Justice Scalia noted that at least in the situation of court-approved settlements, "the outcome is ... the product of, and bears the sanction of, judicial action in the lawsuit." *Id.* at 618, 121 S.Ct. 1835 (Scalia, J., concurring).

### B.

■ On appeal, Truesdell argues that he is a prevailing party because he sought and obtained complete relief on his first claim (a retroactive readjustment of PHA's rent assistance payments on his behalf), and substantial relief on his second claim (continued Section 8 housing). In response, PHA primarily argues that Truesdell did not prevail because he remains on project-based assistance, while the relief that he really sought was a Section 8 voucher for tenant-based assistance. PHA also maintains that, because it never admitted liability nor consented to what counsel termed in oral argument a "gratuitous resolution," the January 24th Order was a stipulated settlement—not a court

---

**3.** In *Buckhannon,* the Supreme Court rejected the "catalyst theory," holding that where a party has failed to secure a judgment on the merits or a court-ordered consent decree, but has nonetheless achieved the desired result because the lawsuit brought about a voluntary change in the defendant's conduct, the plaintiff is not a "prevailing party." 532 U.S. at 605, 121 S.Ct. 1835.

**4.** In *Maher,* the Court held that "[t]he fact that [the recipient] prevailed through a settlement rather than through litigation does not weaken her claim to fees." 448 U.S. at 129,

100 S.Ct. 2570. The Court relied on the text of § 1988 as well as its legislative history: "Nothing in the language of 1988 conditions the District Court's power to award fees on full litigation of the issues or on a judicial determination that the plaintiff's rights have been violated. Moreover, the Senate Report expressly stated that 'for purposes of the award of counsel fees, parties may be considered to have prevailed when they vindicate rights through a consent judgement or without formally obtaining relief.'" *Id.*

approved consent decree—and therefore no attorney's fees should be awarded.[5]

rendering one side a "prevailing party" under § 1988.

### 1.

▇▇ We first consider whether the January 24th Order, in form, may support an award of attorney's fees. In denying Truesdell's application, the District Court stated: "[the court] did not view either side of the settlement to be prevailing, *it's a settlement, it's a resolution . . . .*" Memorandum & Order, December 4, 2000, at 2 (emphasis added). We do not agree with the District Court's conclusion that the parties' *settlement* was an inappropriate basis for an award of attorney's fees. As previously noted, under *Buckhannon*, attorney's fees may be awarded based on a settlement when it is enforced through a consent decree. *Buckhannon*, 532 U.S. at 604, 121 S.Ct. 1835. Although PHA characterizes the January 24th Order as a stipulated settlement, the Order does not bear the characteristics of a stipulated settlement. On its face, the January 24th Order (1) contains mandatory language (e.g., "The [PHA] shall provide . . ."), (2) is entitled "Order," and (3) bears the signature of the District Court judge, not the parties' counsel. Moreover, the January 24th Order gave Truesdell the right to request judicial enforcement of the settlement against PHA. *See Farrar*, 506 U.S. at 113, 113 S.Ct. 566 ("No material alteration of the legal relationship between the parties occurs until the plaintiff becomes entitled to enforce a judgment, consent decree, or settlement against the defendant."). For these reasons, we hold that the January 24th Order is a proper vehicle for

### 2.

▇▇ We next consider whether the terms of the settlement memorialized in the January 24th Order render Truesdell a "prevailing party" by "material[ly] alter[ing][ ] the legal relationship" between PHA and Truesdell. *Texas Teachers Ass'n*, 489 U.S. at 792–93, 109 S.Ct. 1486. Under the "generous formulation" of "prevailing party" status in the previously noted authorities, it would be difficult to conclude that Truesdell has not achieved a change in his legal relationship with PHA under the terms of the January 24th Order.

On Truesdell's first claim—retroactive rent readjustment—it is clear that Truesdell did achieve complete success. Before the lawsuit, PHA refused to retroactively reduce Truesdell's "tenant rent" for the applicable time period beginning February 1, 1999. After the January 24th Order, Truesdell could, and did, request judicial enforcement against PHA for the application of the retroactive rent adjustment. Truesdell's success on this claim is significant. But for PHA's payment to Truesdell's landlord of the $464 deficiency in tenant rent, Truesdell would have been ineligible for continued Section 8 housing. Thus, his success on the first claim was significant, not only because it rectified the deficiency, but also because it allowed him continued eligibility for Section 8 housing.

Truesdell's success on his second claim is less clear. It is true that Truesdell, at

---

**5.** Truesdell did not waive his right to recover attorney's fees simply because the settlement agreement is silent in that regard. *See Torres v. Metropolitan Life Ins. Co.*, 189 F.3d 331 (3d Cir.1999) ("A settlement agreement that is silent as to attorney's fees will not be deemed to constitute a waiver, regardless of the

course of negotiations."). Even though the January 24th Order does not discuss attorney's fees, counsel for Truesdell specifically reserved the right to file a motion for attorney's fees during the preliminary injunction hearing at which time the settlement terms were negotiated.

the preliminary injunction hearing, initially sought a Section 8 voucher for tenant-based assistance, and this, according to the January 24th Order, was not ultimately granted him. Truesdell did receive, however, continued project-based rental assistance at a better housing unit (with private sanitary and kitchen facilities). These facts suggest that while Truesdell did not achieve complete success on his second claim, the litigation did bring about partial success in the form of continued Section 8 assistance. We, therefore, conclude that Truesdell enjoyed complete success on his first claim and partial success on his second claim.

### 3.

We do not agree with PHA that Truesdell's limited success on the second claim was so *de minimis* as to deprive Truesdell of his status as a "prevailing party" altogether. *See* Appellees' Br. at 10. When, as we concluded above, a material alteration in the legal relationship of the parties has occurred, "the degree of the plaintiff's overall success goes to the reasonableness of the award under Hensley, not to the availability of a fee award *vel non*." *Texas State Teachers Ass'n*, 489 U.S. at 793, 109 S.Ct. 1486. Thus, the District Court on remand may weigh Truesdell's partial success on the second claim in determining the appropriate *amount* of the award. *See Hensley*, 461 U.S. at 440, 103 S.Ct. 1933 (stating that "where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained"). The *Hensley* Court acknowledged that there is "no precise rule or formula" in making this determination but advised district courts that they "may attempt to identify specific hours that should be eliminated, or [ ] sim-

ply reduce the award to account for the limited success." *Id.* at 436–37, 103 S.Ct. 1933.

### C.

We, therefore, reverse the District Court's Order of February 9, 2001, and remand this case with instructions to award attorney's fees to the appellant in an amount that is reasonable in light of his complete success on his first claim and partial success on his second claim. The District Court should also evaluate the appellant's entitlement to attorney's fees in connection with the motion to enforce and for contempt sanctions under 42 U.S.C. § 1988 and as a sanction for PHA's civil contempt of the Settlement Order.