Catherine **HUTCHINSON**, by her guardian Sandy **JULIEN**, et al., Plaintiffs

v.

Deval L. **PATRICK**, et al., Defendants.

C.A. No. 07–CV–30084–MAP.

United States District Court, D. Massachusetts.

Feb. 8, 2010.

Anne M. McLaughlin, Michael R. Dube, Miranda Hooker, Richard A. Johnston, Wilmer Hale LLP, Boston, MA, Kathryn L. Rucker, Steven J. Schwartz, Northampton, MA, for Plaintiffs.

Jane L. Willoughby, Jennifer Cartee, Attorney General's Office, Jennifer G. Miller, Massachusetts Attorney General's Office, Boston, MA, for Defendants.

### MEMORANDUM AND ORDER REGARDING MOTION FOR ATTORNEY FEES AND COSTS

### (Dkt. No. 59)

PONSOR, District Judge.

### I. INTRODUCTION

Plaintiffs, institutionalized individuals with severe brain injuries, filed a class-action suit against Defendants on May 17, 2007 to secure improved home and community-based services from the Commonwealth of Massachusetts. A class was certified on September 26, 2007 (Dkt. No. 35), and the Commonwealth subsequently agreed to provide some of the additional and improved services Plaintiffs sought.

The case settled with the court's approval on September 18, 2008. (Dkt. No. 53.)

Plaintiffs now move for an award of attorneys' fees under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12205. (Dkt. No. 59.) Defendants oppose. (Dkt. No. 67.) For the reasons set forth below, the court will allow Plaintiffs' motion and award the fees and costs requested.

### II. BACKGROUND

Plaintiffs' suit alleged violations of the ADA, 42 U.S.C. §§ 12101 *et seq.*, Section 504 of the Rehabilitation Act, 29 U.S.C. §§ 794(a) *et seq.*, and Title XIX of the Social Security Act, 42 U.S.C. §§ 1396a(a)(8), 1396a(a)(10)(A), and 1396n(c). (Dkt. No. 7, Am. Compl. ¶¶ 98–118.)

In the order approving settlement (the "Order"), the court specified, at the parties' behest, that it was not entering a consent decree. The court also specified (1) that it was retaining jurisdiction over the case so as to ensure the parties' timely compliance with the terms of the agreement, and (2) that final judgment would not enter "pending compliance" with such terms. (Dkt. No. 53.)

The resulting Final Comprehensive Settlement Agreement (the "Agreement") likewise provided that the court would retain jurisdiction to adjudicate potential compliance disputes. (Dkt. No. 42, Attach. 1 ¶ 40.) It also outlined a series of procedures Plaintiffs had to follow in the event of disputes, including a requirement that Plaintiffs participate in mediation before seeking an enforcement order from the court. *Id.* ¶ 42.

Although the Agreement was clear that the court could not, in the first instance, find Defendants in contempt based on a finding of non-compliance, the court's discretion was otherwise quite broad; its re-

medial order was required only to be "consistent with equitable principles." *Id.* ¶ 43. If Defendants did not comply with the court's first remedial order, the court was authorized thereafter to "apply equitable principles and . . . use any appropriate equitable or remedial power then available to it." *Id.* ¶ 44. The Agreement made clear that, at this final stage of the enforcement process the court would have the power, if necessary, to enter an order of contempt.

The Agreement also allowed Plaintiffs to recommence litigation in the event that Defendants proved unable or unwilling to comply with its terms. *Id.* ¶ 47. Finally, it made clear that modifications to the terms of the Agreement could not be unilateral; they required mutual agreement and the approval of the court. *Id.* ¶ 48.

As noted, Plaintiffs now seek an award of attorneys' fees. Defendants oppose the request on two grounds: first, Plaintiffs were not the "prevailing parties," within the meaning of the statute; second, the requested fees are excessive. The first argument is unpersuasive as a matter of law, the second as a matter of fact.

## III. *DISCUSSION*

### A. *Prevailing–Party Status*

#### 1. *Legal Background*

The ADA provides for attorneys' fees as follows:

In any action or administrative proceeding commenced pursuant to this chapter,

the court or agency, in its discretion, may allow the *prevailing party*, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs, and the United States shall be liable for the foregoing the same as a private individual.

42 U.S.C. § 12205 (emphasis added). The Supreme Court set the standard for prevailing-party status in *Buckhannon Board & Care Home, Inc. v. West Virginia Dep't of Health & Human Resources*, 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001).[1] *Buckhannon* held that a plaintiff was not a prevailing party unless there had been both a "material alteration of the legal relationship of the parties" and "a judicial imprimatur on the change." *Id.* at 604–5, 121 S.Ct. 1835. It was not sufficient that the lawsuit was a "catalyst" in changing the parties' legal relationship. *Id.* Here, it is undisputed that the Agreement materially altered the legal relationship of the parties. At issue in this case is *Buckhannon's* "judicial imprimatur" criterion.

It is well established that a judgment on the merits and a consent decree both confer sufficient judicial imprimatur to satisfy the Supreme Court's requirement for an entitlement to fees. *Buckhannon*, at 605, 121 S.Ct. 1835. However, *Buckhannon* did not specify whether these were the sole mechanisms of judicial imprimatur or whether some other disposition, short of a judgment or a consent decree, might also suffice.[2] The circuit courts construing

---

**1.** *Buckhannon* involved two separate fee-shifting statutes: the Fair Housing Amendments Act of 1988(FAA), 42 U.S.C. § 3613(c), and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12205. However, the *Buckhannon* holding was broadly applicable. Courts have applied the Supreme Court's "prevailing party" jurisprudence to all federal fee-shifting statutes that use the "prevailing party" terminology. *See Doe v. Boston Public Schools*, 358 F.3d 20, 25 (1st Cir.2004).

**2.** *Buckhannon* holds only that "the catalyst theory is not a permissible basis for the award of attorney's fees under the FHAA and ADA." *Buckhannon*, at 610, 121 S.Ct. 1835 (internal citations omitted). In his concurrence, Justice Scalia observes that, in a number of cases cited in Justice Ginsberg's dissent, the traditional concept of a "prevailing party" overlapped with the set of plaintiffs who had earned "a judicial finding—or its equivalent, an acknowledgment by the defendant—of the merits of plaintiff's case." *Id.* at 612, 121

*Buckhannon* have answered this question in a variety of ways, with the majority of circuits declining to limit prevailing-party status only to plaintiffs who obtain a judgment on the merits or a consent decree. Currently, the Eighth Circuit alone interprets *Buckhannon* to preclude recovery of attorneys' fees absent a judgment on the merits or a consent decree. *Christina A. v. Bloomberg*, 315 F.3d 990, 993 (8th Cir. 2003) ("a party prevails only if it receives either an enforceable judgment on the merits or a consent decree"). However, the D.C., Second, Third, Fourth, Seventh, Ninth, Eleventh, and Federal Circuits all interpret *Buckhannon* less narrowly. *See Davy v. CIA*, 456 F.3d 162 166 (D.C.Cir. 2006); *Roberson v. Giuliani*, 346 F.3d 75, 81 (2nd Cir.2003); *Truesdell v. Philadelphia Housing Authority*, 290 F.3d 159, 165 (3rd Cir.2002); *Truesdell v. Philadelphia Housing Authority*, 290 F.3d 159, 165 (3rd Cir.2002); *Smyth ex. Rel. Smyth v. Rivero*, 282 F.3d 268, 281 (4th Cir.2002); *T.D. v. LaGrange School Dist. No. 102*, 349 F.3d 469, 478 (7th Cir.2003); *Barrios v. Cal. Interscholastic Fed'n*, 277 F.3d 1128, 1134 n. 5 (9th Cir.2002); *American Disability Ass'n, Inc. v. Chmielarz*, 289 F.3d 1315, 1319 (11th Cir.2002); and *Rice Services, Ltd. v. U.S.*, 405 F.3d 1017, 1025 (Fed.Cir.2005).

The circuits adopting a more generous interpretation of *Buckhannon* articulate various "judicial imprimatur" standards. For example, in the D.C. Circuit and the Third Circuit, a party "prevails" when the court issues an order that (1) contains mandatory language, (2) is entitled an "order," and (3) bears the district judge's signature, not those of the parties' counsel. *Davy*, at 162; *Truesdell*, at 165. In the Federal, Fourth, and Seventh Circuits, a party "prevails" upon obtaining an order that is analogous to, or the functional equivalent of, a judgment or consent decree. *Rice Services*, at 1025; *Smyth*, at 281; *T.D. v. LaGrange*, at 478. In the Ninth Circuit, a plaintiff "prevails" upon entering into a legally enforceable settlement agreement. *Barrios*, at 1134.

■ The First Circuit has joined the majority of its sister circuits in declining to interpret *Buckhannon* narrowly and in articulating its own "judicial imprimatur" standard. In the recent case of *Aronov v. Napolitano*, 562 F.3d 84 (1st Cir.2009) (en banc), the First Circuit held that a plaintiff may be a prevailing party if he or she has obtained a court order in a context evidencing the sort of judicial involvement typically found where there is a court-ordered consent decree. *Aronov*, at 90.[3] The court pointed to three key characteristics it associated with such judicial involvement: (1) a "court-ordered" change in the legal relationship of the parties, (2) judicial approval of the relief "vis-à-vis the merits of the case," and (3) ongoing judicial oversight and the ability of the court to enforce the obligations imposed on the parties. *Id.*[4]

Here, Plaintiffs argue that the court's order approving the Agreement exhibits

S.Ct. 1835 (Scalia, J., concurring). Justice Scalia suggests such cases would continue to sustain an action for fees under *Buckhannon*. *Id.* Justice Ginsberg, speculating on what might constitute this equivalent "acknowledgment" by a defendant, took the position that the majority opinion foreclosed the possibility that settlement alone might suffice. *Id.* at 632 n. 8, 121 S.Ct. 1835 (Ginsberg, J., dissenting).

**3.** The First Circuit had previously declined to take a position on "whether a party could prevail under Buckhannon in the absence of a consent decree or a final judgment on the merits." *See Smith v. Fitchburg Public Schools*, 401 F.3d 16, 23 (1st Cir.2005).

**4.** The *Aronov* court applied these factors to find that the plaintiff was not the prevailing party because the remand to a federal agency lacked sufficient judicial imprimatur.

all three *Aronov* characteristics and therefore has sufficient "judicial imprimatur" to support their claim for fees. Defendants, for their part, argue that the court should *not* look to the three *Aronov* factors. They contend that Plaintiffs, having explicitly agreed that the Order was *not* a consent decree, cannot now point to consent-decree-like features to support their claim for fees. (Dkt. No. 67, Defs.' Mem. in Opp'n to Mot. for an Award of Att'ys' Fees 9–10.).

Defendants are, to a certain extent, boxed into this awkward advocacy position by the fact that *Aronov* came down after the Agreement in this case was signed. Thus, while Defendants' argument against applying the *Aronov* factors scores points as a brave effort, it is unconvincing. *Aronov* specifically holds that "it is the reality, not the nomenclature which is at issue" in identifying a prevailing party. *Aronov*, at 90. A careful reading of the Order reveals that the *Aronov* decision strongly supports Plaintiffs' claim for fees.[5]

### 2. The Order and the Aranov Factors

The first *Aronov* factor asks whether the legal relationship of the parties altered specifically because of the court order. *Aronov*, at 91. In this case, if the court had not approved the Agreement, the extension of home-based services to individuals with brain injuries would not have occurred. As the Agreement states, "[i]f the Court does not approve this Settlement Agreement in all respects, the Agreement shall be null and void." (Dkt. No. 42, Attach. 1, Final Comprehensive Settlement Agreement ¶ 39.) Thus, the first *Aronov* factor has been met.

The second *Aronov* factor involves an "appraisal of the merits." *Aronov*, at 91. This element simply requires the judge issuing the order to "examine its terms to be sure they are fair and not unlawful." *Aronov*, at 91. Fed.R.Civ.P. 23(e) requires judicial approval of a proposed class-action settlement and a judicial finding that the proposal is "fair, adequate and reasonable," *City Partnership Co. v. Atlantic Acquisition Ltd. Partnership*, 100 F.3d 1041, 1043 (1st Cir.1996) (citing *Durrett v. Housing Authority of the City of Providence*, 896 F.2d 600, 604 (1st Cir. 1990)). Because Rule 23(e) requires the same inquiry into the merits as *Aronov*, a judicial finding under Rule 23(e) meets the second *Aronov* requirement.

Defendants imply that the court should not take into account the operation of Rule 23(e) in evaluating the second prong of *Aronov*. Such analysis, they suggest, would transform into a prevailing party every certified class-action plaintiff who settles.

The implication is incorrect. While court-approved settlement of a certified class will probably meet the *Aronov* evaluation-of-the-merits prong, the third *Aronov* prong, ongoing enforcement authority, will *not* be automatically met. Some class actions may terminate with the payment of money immediately upon settlement. Others with a more involved remedy may specifically deprive the certifying court of future jurisdiction by limiting enforcement to another venue.

For these reasons, the court does not share Defendants' fear that its second-prong analysis would expose every defendant who settles a certified class action to liability for attorneys' fees. Accordingly, the second *Aronov* factor has been met.

---

**5.** The Second Circuit, in a recent decision, has also found sufficient judicial imprimatur to support an award of attorneys' fees where the governing settlement agreement explicitly states that it is not a consent decree. *Perez v. Westchester County Dep't of Corrections*, 587 F.3d 143, 147–48, 150–53 (2d Cir.2009).

The third *Aronov* factor asks whether (1) there is an "obligation [of the parties] to comply and (2) whether this obligation is subject to judicial oversight to enforce that obligation." *Aronov*, at 91.

 The "compliance" obligation is generally satisfied if the terms of an agreement are mandatory and not subject to change absent approval by a court. *Id.* (citing Fed.R.Civ.P. 60(b) and *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 378–83, 112 S.Ct. 748, 116 L.Ed.2d 867 (1992)). Rule 60(b) only requires a motion and court approval to modify a court order, whereas the Agreement requires the consent of the non-moving party as well. (Dkt. No. 42, Attach. 1, Final Comprehensive Settlement Agreement ¶ 48.) Because the Agreement is even more insulated against modification than a standard court order, the requirement of a "compliance" obligation is manifestly satisfied here.

 The "enforcement" obligation also requires a settlement agreement to be enforceable through some other means than a breach of contract action. *Aronov*, at 91. Defendants argue that the enforcement procedures in the Agreement are too circumscribed to satisfy this requirement. During oral argument, Defendants proposed that the procedures in the Agreement merely lay out a venue provision. In the event of noncompliance, Defendants argued, the court might in its discretion order specific performance, and this is essentially a contractual remedy, insufficient under *Aronov*.

Defendants' argument mischaracterizes the court's authority under the Agreement. From the very first motion to enforce, the court has authority to enter any order (short of contempt) that is "consistent with equitable principles." (Dkt. No. 42, Attach. 1 ¶ 43.). The court is not limited to remedies appropriate in breach of contract actions. If Defendants do not comply with the court's enforcement order, the court's authority expands further, and the court may use "any appropriate equitable or remedial power then available to it." *Id.* ¶ 44. The court's authority extends well beyond the remedies of specific performance and expectation damages traditionally associated with a breach of contract action. It is therefore sufficient to meet the enforcement requirement.

Defendants also argue that, unless contempt is available as an enforcement mechanism of first resort, the court's enforcement authority is insufficient to satisfy *Aronov*. This argument overstates the significance of a first-order contempt proceeding. *Aronov* merely requires that the settlement include a "form of specific relief, which may *ultimately* be enforceable by contempt." *Aronov*, at 91 (emphasis added). This requirement—that a contempt order must be available "ultimately"—is met in this case, where the court may issue a contempt order upon a showing that its enforcement order has been disregarded.

Defendants' follow-up argument that the Order itself must articulate a specific enforcement mechanism, and fails to do so, overlooks the implications of the court's retention of jurisdiction. A district court that retains jurisdiction retains full enforcement authority. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994), *cited in Buckhannon*, at 604 n. 7, 121 S.Ct. 1835; (*Aronov*, at 93). This court retained jurisdiction. (Dkt. No. 53, Order Approving Final Comprehensive Settlement Agreement.) Thus, even if the Agreement contained no specific procedures governing enforcement, this court would have sufficient authority to enforce the Agreement upon a motion from either party. The Order itself confers such authority by its own terms and without incorporating the Agreement.

Finally, the argument that the Order itself must be enforceable misunderstands the scope of the *Aronov* inquiry. *Aronov* requires the court to evaluate "the content of the order against the entire context before the court." *Aronov*, at 90. The Agreement is part of such context. Moreover, the Fourth Circuit, which the First Circuit cites positively in articulating its "oversight and enforcement" prong, does not require "the order itself" to be the equivalent of a consent decree. *See Aronov*, at 91 ("an obligation to comply and the provision of judicial oversight to enforce that obligation are the *sine qua non* for a consent decree") (citing *Smyth v. Rivero*, 282 F.3d 268, 279–81 (4th Cir. 2002)). The Fourth Circuit asks whether the agreement and the order are "*in combination,* equivalent to a consent decree." *Smyth*, at 274 (emphasis added).

Because the Agreement is enforceable and this court has ongoing jurisdiction to enforce it, the third *Aronov* factor has been met.

### 3. *Timing of Motion for Fees.*

Defendants also argue that the motion for attorneys' fees is premature, that, until a final judgment has issued or the court has dismissed the case, there can be no prevailing party. The cases Defendants cite in support of their argument, however, all arise from litigation that was actually ongoing at the time the motion for fees appeared. In *Hanrahan v. Hampton*, 446 U.S. 754, 758–59, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980), the plaintiffs were denied prevailing-party status after having defeated a motion to dismiss. In *Sole v. Wyner*, 551 U.S. 74, 86, 127 S.Ct. 2188, 167 L.Ed.2d 1069 (2007), the plaintiff, despite having secured a preliminary injunction, was denied prevailing-party status because she was denied a permanent injunction. Defendants cite no cases in which an order issued settling the case and the motion for fees was nonetheless found to be premature.

◼ Moreover, Defendants' timing argument runs counter to the holdings in *Buckhannon* and *Aronov*, both of which permit the grant of fees when an enforceable settlement is approved with sufficient judicial imprimatur, and neither of which limits the definition of "prevailing parties" to cases where a final judgment has entered. In this case, the full satisfaction of the terms of the Agreement will take many years. It would be both unfair to Plaintiffs and burdensome to judicial administration to delay consideration of the fee issue until the ordered, and agreed, remedy has been implemented in full.

### B. *Reasonableness of Requested Fees*

◼ The issue of the reasonableness of Plaintiffs' fee request does not require extended discussion. Plaintiffs seek an award of attorneys' fees in the amount of $775,136 and of expenses in the amount of $10,987. For a case of this importance and difficulty, with the extremely beneficial results for this vulnerable class of citizens, this request is eminently fair. Significantly, both figures represent a substantial voluntary reduction of what might easily have been claimed. As Plaintiffs' submission confirms, the classic "lodestar" analysis might have produced a defensible fee claim exceeding $1.1 million and a request for costs of over $50,000. The court will not penalize counsel for their laudable restraint.

Addressing Defendants' specific objections, the court finds as follows. First, the limited hours claimed for work done during the pre-filing phase of this case was justified by the need for preparation and the reasonable hope for a non-litigated resolution. Second, Defendant's opposition during the months following filing made the commitment of attorneys and attorney

time on Plaintiffs' side both necessary and inevitable. The voluntary elimination of several attorneys from the fee request and the substantial reduction in claimed time rebuts any defense objections for over-lawyering or excessive hours. *See Rosie D. v. Patrick,* 593 F.Supp.2d 325, 330 (D.Mass.2009). The hourly rates are well supported by knowledgeable affiants and consistent with rates approved in similar cases. Again, the court notes that counsel from the firm Wilmer Hale substantially reduced their normal rates. Compensation for travel time of two of Plaintiffs' counsel at one-half the reasonable rate reflected the necessities of the case.

For the foregoing reasons the court hereby awards fees as follows:

| | Rate | Hours | Award |
| --- | --- | --- | --- |
| Steven Schwartz | $425 | 583.7 | $232,836 |
| Kathryn Rucker | $212 | 646 | $181,200 |
| Richard Johnston | $425 | 164.2 | $ 69,785 |
| Robert Mahoney | $345 | 124.3 | $ 42,884 |
| Stephen Muller | $347 | 42.6 | $ 14,782 |
| Michael Dube | $328 | 264.8 | $ 86,854 |
| Miranda Hooker | $300 | 122.4 | $ 36,720 |
| Anne McLaughlin | $250 | 440.3 | $110,075 |

In addition, as noted the court awards costs in the amount of $10,986.75. The fees and costs as ordered will be tendered, absent an appeal, within sixty days of this memorandum.

## IV. *CONCLUSION*

Based on the foregoing, Plaintiffs' Motion for Attorney Fees and Costs (Dkt. No. 59) is hereby ALLOWED.

It is So Ordered.